UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ADRIANNA AULT, individually and on
behalf of all others similarly situated,

                           Plaintiff,

        -against-

J.M. SMUCKER CO., an Ohio corporation,
and DOES 1-50,

                    Defendants.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED: 5-15-14

13 Civ. 3409 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Adrianna Ault ("Plaintiff") claims to have been mislead by Defendant J.M.
Smucker Co.'s ("Smuckers" or "Defendant") marketing of its Crisco Oil products (Crisco Pure
Vegetable Oil, Crisco Pure Canola Oil, Crisco Pure Corn Oil, and Crisco Natural Blend Oil)
(collectively, "Crisco Oil") as "All Natural" when Crisco Oil comes from soy beans, rapeseeds,
and corn, which are genetically modified organisms ("GMO") and therefore do not naturally
occur; and also because Crisco Oil is so heavily processed that it is really manmade.  This is not
the first legal action challenging the labeling of a food product (e.g., corn oil) as "All Natural,"
when the source of the product (e.g., corn) is or might be a GMO.

Defendant moves to dismiss for the following reasons:  (1) the U.S. Food and Drug
Administration's ("FDA") policies and regulations preempt Plaintiff's state law claims; (2) even
if there is no preemption, the Court should decline to enter the "All Natural" debate and defer to
the FDA as it has primary jurisdiction; (3) Plaintiff's consumer protection claims fail because
they do not allege with particularity that Crisco Oil contains GMOs or artificial ingredients or
that a reasonable consumer would be misled by Crisco Oil's "All Natural" label; (4) Plaintiff's

breach of warranty claim fails because "All Natural" does not constitute a warranty and because Plaintiff lacks privity with Smuckers; and (6) Plaintiff lacks standing to pursue any claims involving Crisco Oils that she did not purchase.

While it might be better for the FDA to commence an administrative proceeding or process, involving all stakeholders, focusing on how, why, and when products can be labeled "All Natural," the fact is that the FDA has not done so and is not likely to do so in the near future. In these circumstances, Defendant's arguments concerning preemption cannot prevail. While litigating under state false advertising laws has obvious drawbacks, it would be unwise— at least at the pleading stage—to deprive Plaintiff of her state remedy. Accordingly, the Court DENIES Defendant's motion.

## COMPLAINT

Plaintiff alleges that Crisco Oil is not "All Natural" because its ingredients are likely derived from GMO. Over 70 percent of U.S. corn, over 90 percent of U.S. soy, and over 80 percent of U.S. canola (rapeseed) crops are GMO, and Smuckers sources its ingredients from U.S. commodity suppliers who supply GMO. *Id.* ¶ 21. When a producer wishes to use non-GMO ingredients, it must specifically source its crops or purchase and verify its supply from non-GMO growers through identity preservation programs. *Id.* Having failed to lay claim to either method or to label its products as non-GMO, Plaintiff concludes that it must be that Smuckers uses GMO in Crisco Oil. *Id.* ¶¶ 21-22. Plaintiff also points to Smuckers's "Statement Regarding Genetic Modification," where it stated that "[d]ue to expanding use of biotechnology by farmers and commingling of ingredients in storage and shipment, it is possible that some of [Smuckers'] products may contain ingredients derived from biotechnology." *Id.* ¶ 22.

Plaintiff also claims that the ingredients are not "All Natural" because their processing deprives them of the chemical properties of the plants from which they originated and therefore renders the final products chemically-derived and non-natural. *Id.* ¶ 24. Crisco Oil undergoes five chemical processes. *Id.* ¶ 26. First, a physical press is applied to the vegetables to extract the oil. Any remaining oil in the vegetables is extracted with the chemical Hexane, which may be present in the final product. *Id.* Third, the crude oil is neutralized with an alkaline soap solution that separates and removes the free fatty acids. The solution is separated from the oil using potassium hydroxide, a corrosive acid. *Id.* ¶ 28. Finally, the oil is bleached and deodorized using additional cleaning solutions and conditioned using high-concentration phosphoric acid. *Id.* ¶¶ 29-30.

Plaintiff purchased Crisco Oil products in the past four years "in reliance on Defendant's representations that the Products are 'All Natural.'" *Id.* ¶ 8. This representation was material to her decision to purchase the products, and Plaintiff suffered injury as a result. *Id.* Plaintiff alleges that Smuckers's advertising of Crisco Oil violates New York General Business Laws §§ 349 and 350 and breaches its express warranty that Crisco Oil is all natural. She brings this action on behalf of all purchasers of Crisco Oil from May 15, 2009 until the class action notice is disseminated. *Id.* ¶ 31.

## DISCUSSION

### I.   Legal Standard

To state a claim, a plaintiff must "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must allege "'enough facts to state a claim to

relief that is plausible on its face.'" *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all well-pleaded factual allegations and draws all inferences in Plaintiff's favor. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006). In evaluating a motion to dismiss, the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit." *ATSI*, 493 F.3d at 98.[1]

## II.    Plaintiff's Claims Are Not Preempted by FDA Policies

Defendant argues that Plaintiff's New York General Business Laws §§ 349 and 350 claims are preempted by FDA policies. Preemption of state law occurs through the "direct operation of the Supremacy Clause." *Kurns v. R.R. Friction Prods. Corp.*, 132 S. Ct. 1261, 1265 (2012) (internal quotations omitted). Even without an express provision for preemption, state law must yield to federal law when there is a conflict with a federal statute or when the scope of a federal statute indicates that Congress intended federal law to occupy a field exclusively. *See id.* at 1265-66. Here, there is no indication that Congress intended the FDA to occupy the entire field of food labeling. *See Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1032 (N.D. Cal. 2009). As a result, the state law claims are preempted only if they seek to impose requirements that conflict with federal requirements.

---

[1] Defendant requests that the Court take judicial notice of ten documents submitted in support of its motion. Plaintiff objects to the Court taking notice of transcripts of Congressional testimony by Food and Drug Administration ("FDA") officials, which are included as Exhibits 6 and 8, because they are not adjudicative facts. *See* Plaintiff's Opposition to Defendant's Request for Judicial Notice, ECF No. 28. But "congressional testimony is an appropriate subject for judicial notice as a public record for the fact that the statements were made." *See Muller-Paisner v. TIAA*, 289 Fed. Appx. 461, 466 n.5 (2d Cir. 2008) (slip op.). As a result, the Court will take judicial notice of the fact that FDA officials made these statements, not that those statements establish FDA policy.

Defendant first claims that the state law claims conflict with "a series of FDA policies regarding bioengineered foods." *See* Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mot"), ECF No. 25 at 12. According to Defendant, even informal FDA policies regarding the use of the term "natural" can preempt state law. *See id.* In support, Defendant cites to *Grocery Manufacturers of America, Inc. v. Gerace*, 755 F.2d 993 (2d Cir. 1985), where the Second Circuit held that New York law imposed cheese labeling requirements regarding the precise size of the letters and location of the word "imitation" that did not "comport exactly with the federal specifications." *Id.* at 1002. But no federal specifications exist here. *See* Letter from Tina Wolfson to the Hon. Paul A. Crotty, January 7, 2014, ECF No. 32, Ex. 1 at 2 [hereinafter "January 6, 2014 FDA Letter"] ("FDA has not promulgated a formal definition of the term 'natural' with respect to foods."). Even if an informal FDA definition does exist, the term "natural" "may be used in numerous contexts and may convey different meanings depending on that context." 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010). Indeed, that is one of the reasons the FDA has never adopted a formal definition. *Pelayo v. Nestle USA, Inc.*, No. CV 13-5213, 2013 WL 5764644, at *5 (C.D. Cal. Oct. 25, 2013). Notably, the FDA has declined to consider the specific issue here: "whether and under what circumstances food products containing ingredients produced using genetically engineered ingredients may or may not be labeled 'natural.'" *See* January 6, 2014 FDA Letter at 3. As a result, any general, informal FDA guidance is not controlling. *See In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-md-2413, 2013 WL 4647512, at *10 (E.D.N.Y. Aug. 29, 2013) (collecting cases).

Defendant also urges that the FDA's decision *not* to impose a labeling requirement for foods containing GMOs is significant. *See* Def.'s Mot. at 12-13. In effect, Defendant interprets the FDA's lack of action as approval for Defendant's use of the phrase "All Natural" to describe

foods containing GMO. In reality, the FDA has stayed silent because it "operates in a world of limited resources" where it "must prioritize which issues to address." *See* January 6, 2014 FDA Letter at 2. Since other "priority food public health and safety matters are largely occupying the limited resources that FDA has to address food matters," the FDA has not had time to adopt regulations on the use of the term "All Natural." *See id*. Where the FDA is unable to address a potentially deceptive practice, state claims are one of the few means of safeguarding consumers and therefore should not be preempted by the FDA's inaction.[2]

Next, Defendant argues that the state law claims are preempted by FDA regulations governing the identification of common ingredients. *See* Def.'s Mot. at 13-16. According to Defendant, Plaintiff places it "between the proverbial rock and a hard place by requesting this Court mandate labeling of allegedly bioengineered ingredients, which Smucker[s] is not permitted to do under FDA policy and regulations." *Id*. at 13-14. This is an inaccurate description of Plaintiff's requested relief. Rather than "suggest[ing] that Smucker[s] should have identified its ingredients as bioengineered," *id.* at 15, Plaintiff seeks to prevent Defendant from using the slogan "All Natural" to describe foods containing GMOs. Eliminating "All Natural" has no effect on Defendant's ingredient labeling and therefore cannot conflict with FDA labeling requirements. As a result, "[t]his is not a preempted theory." *See Parker v. J.M. Smucker Co.*, No. 13-0690, 2013 WL 4516156, *4 (N.D. Cal. Aug. 23, 2013).

Nevertheless, Defendant argues that this is "an end-run" around "FDA regulations regarding bioengineered ingredients by claiming that she is merely objecting to the 'all natural' label, rather than the alleged use of bioengineered ingredients." Def.'s Mot. at 16. In support,

---

[2] This distinguishes *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012), which held that claims related to Coca-Cola's Pomegranate Blueberry juice were preempted because the FDA had "acted extensively and carefully in this field" and chose not to issue regulations governing the specific issue. *See id.* at 1178. The January 6, 2014 FDA Letter, however, demonstrates that the FDA has been unable to carefully consider use of the term "All Natural," and so has taken no action.

6

Defendant relies on *In re PepsiCo, Inc. Bottled Water Mktg. & Sales Practices Litig.*, 588 F.

Supp. 2d 527 (S.D.N.Y. 2008), where plaintiff claimed Pepsi misrepresented the source of

Aquafina water by using a label to imply that the water came from a mountain source when it

was actually purified tap water. The Court held that the claims were preempted because "the

FDA specifically addressed the disclosure of source information and determined . . . that

representations of source are immaterial in the context of purified water." *Id.* at 535. But

Plaintiff does not claim that Defendant misrepresented the list of ingredients in Crisco Oil;

rather, Plaintiff claims that the use of the phrase "All Natural" is misleading to describe foods

containing GMOs and that no FDA regulations specifically address this representation. In fact,

*In re PepsiCo* distinguished a case that held that claims regarding Poland Spring's marketing of

its water as "pure" were not preempted because no federal standard of identify for bottled water

purity existed. *See id.* at 534 & n.6 (describing the case "as irrelevant . . . because the FDA has

not been silent on the issues Plaintiff wishes to address via this lawsuit"). Since no federal

standard exists for the use of the phrase "All Natural," Defendant's reliance on *PepsiCo* is

unavailing.

## III.   The FDA Does Not Have Primary Jurisdiction

Even if there were no preemption, Defendant argues that the Court should decline to rule

on whether foods containing GMOs are "All Natural" because the FDA has primary jurisdiction

over the question. *See* Def.'s Mot. at 18-21. Primary jurisdiction is properly applied "'whenever

enforcement of the claim requires the resolution of issues which, under a regulatory scheme,

have been placed within the special competence of an administrative body.'" *Ellis v. Tribune

Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (quoting *United States v. W. Pacific R.R. Co.*, 352

U.S. 59, 64 (1956)). To make this determination, a court should consider "whether a prior

application to the agency has been made," among other factors. *See id.* at 83. "[A] court need not apply the doctrine where 'resort to the agency would plainly be unavailing in light of its manifest opposition or because it has already evinced its special competence in a manner hostile to petitioner.'" *Goldemberg v. Johnson & Johnson Consumer Cos.*, No. 13-cv-3073, 2014 WL 1285137, at \*7 (S.D.N.Y. Mar. 27, 2014) (quoting *Ellis*, 443 F.3d at 90). Here, three federal district judges previously referred the question of whether foods containing GMOs may be labeled "natural" to the FDA under the primary jurisdiction doctrine. On January 6, 2014, the FDA responded and explicitly declined to make such a determination. *See* January 6, 2014 FDA Letter at 3.[3] The FDA's refusal to consider the question demonstrates that "resort to the agency at this time would be unavailing," *see Goldemberg*, 2014 WL 1285137, at \*7, and therefore weighs against applying the primary jurisdiction doctrine.

Furthermore, the primary jurisdiction doctrine does not apply because "the issue at stake is legal in nature and lies within the traditional realm of judicial competence." *See Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988). While the Court would welcome the FDA's guidance on the definition of "natural," "[t]his case is far less about science than it is about whether a label is misleading." *In re Frito-Lay*, 2013 WL 4647512, at \*8 (internal quotations omitted). The issue is whether the use of the phrase "All Natural" was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *See Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (defining what constitutes a "misleading" practice under New York General Business Laws § 349) (internal quotations

---

[3] Although Defendant cited these cases as support for application of the primary jurisdiction doctrine, *see* Def.'s Mot. at 20-21, they no longer stand for that proposition. *See* Order, *Cox v. Gruma Corp.*, No. 12cv6502 (N.D. Cal. Jan. 10, 2014), ECF No. 71 (lifting stay and asking for briefing regarding the primary jurisdiction doctrine in light of the FDA's letter); Order, *Barnes v. Campbell Soup Co.*, No. 3:12cv05185 (N.D. Cal. Jan. 24, 2014), ECF No. 58 (same); Order, *In re General Mills, Inc. Kix Cereal Litig.*, No. 12cv249 (D.N.J. March 21, 2014), ECF No. 98 (lifting stay and beginning fact discovery).

omitted). A trier of fact can make that determination. Furthermore, there is no telling "whether [a] definition [from the FDA] would shed any further light on whether a reasonable consumer is deceived by the 'All Natural' food label when it contains bioengineered ingredients." *In re Frito-Lay*, 2013 WL 4647512, at *8. As a result, application of the primary jurisdiction is unwarranted.

**IV.     Plaintiff States a Claim Under New York Consumer Protection Laws**

New York General Business Law §§ 349 and 350 proscribes the use of any "[d]eceptive acts or practices" or "[f]alse advertising" "in the conduct of any business, trade or commerce or in the furnishing of any service in this state." A "deceptive act" or "false advertisement" is a material statement that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *See Cohen*, 498 F.3d at 126. Defendant asserts that Plaintiff fails to allege a deceptive act or false advertisement in two ways: (1) Plaintiff has failed to allege with particularity that Crisco Oil contains GMOs or artificial ingredients and (2) Plaintiff has failed to allege that a reasonable consumer would be misled by Crisco Oil's "All Natural" label. Neither argument is convincing.

**A.     Use of GMOs and Artificial Ingredients**

Plaintiff alleges that Crisco Oil's "All Natural" logo is deceiving because the product contains GMOs and is heavily processed. As to Plaintiff's first theory, Defendant claims that the "only factual basis Plaintiff provides for her claim that Crisco oils contain bioengineered ingredients is Smucker's public statement," which merely stated that it is "possible" that Smuckers products may contain GMOs. *See* Def.'s Mot. at 9. But Defendant entirely discounts the Complaint's allegations. (*See* pages 2-3 *supra*.)[4] While Plaintiff is not certain Crisco Oil

---

[4] Defendant is correct that Plaintiff "cannot rely on generalized statistics to make an inference about a particular product or person." Defendant's Reply in Support of Motion to Dismiss ("Def.'s Reply") at 2. But Plaintiff relies

9

contains GMOs, the factual allegations—taken as a whole—are more than sufficient "to raise a right to relief above the speculative level." *ATSI Commc'ns, Inc.*, 493 F.3d at 98 (internal quotations omitted).

Next, Defendant asserts that Plaintiff's processing theory is deficient because "Plaintiff never actually alleges that the product contains artificial ingredients or that the ingredient list for Crisco oils is inaccurate." *See* Def.'s Mot. at 10. Yet Plaintiff does not rely on the identity of Crisco Oil's ingredients to state her claim. Her claim is that the processing deprives the ingredients of the chemical properties of the plants from which they originated and therefore renders the final product chemically-derived and non-natural. *See* Compl. ¶ 24. This is unlike the processing performed on other oils where the extraction process allows those oils to retain their natural chemical composition. *See id.* ¶ 25. Defendant maintains that Crisco Oil's processing does not render it "non-natural," *see* Def.'s Reply at 5; but that is a factual question, not to be considered on a motion to dismiss. Since Plaintiff has plausibly alleged that Crisco Oil's processing renders it non-natural, *see Parker*, 2013 WL 4516156, at \*3, the processing theory states a cause of action.

**B.    Whether "All Natural" Misleads Consumers**

Defendant asserts that a reasonable consumer would not be mislead by Crisco Oil's "All Natural" label "in light of FDA's policy on bioengineered ingredients and the federal government's regulations governing organic foods." *See* Def.'s Mot. at 22. This argument misses the mark. The question is whether a reasonable consumer would be misled by Crisco Oil's use of the "All Natural" label. *See Cohen*, 498 F.3d at 126. While any FDA views on what

---

on generalized statistics simply to demonstrate that most vegetable oils contain GMOs. She then claims that Crisco Oil is one such oil by alleging facts specific to Crisco Oil. These allegations allow "the Court to make a logical leap from 'some crops grown in the United States are GMO' to 'the Crisco oils contain GMO ingredients.'" *See id.* at 3. At this point, however, all facts and inferences are to be drawn in the Plaintiff's favor.

"natural" means may be relevant to this inquiry, *see* Def.'s Mot. at 23, they are not dispositive. *See In re Frito-Lay*, 2013 WL 4647512, at \*8. Furthermore, it is not unreasonable, as a matter of law, for a consumer to believe that non-organic foods labeled as "All Natural" do not possess GMOs. *See id.* at \*15; *Parker*, 2013 WL 4516156, at \*3. In fact, the FDA has not developed a definition for the term "natural" because of the "complexities" of the factual inquiries involved. *See* January 6, 2014 FDA Letter at 2. Ultimately, the question is one of reasonability, which cannot be resolved on Defendant's motion to dismiss. *See In re Frito-Lay*, 2013 WL 4647512, at \*15.

## V.      Plaintiff States a Claim For Breach of Express Warranty

Next, Defendant submits that Plaintiff fails to state a claim for breach of express warranty. A plaintiff must allege "an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon the plaintiff's detriment." *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012) (internal quotations omitted). Defendant argues the breach of warranty claim fails because "All Natural" does not constitute a warranty and because Plaintiff lacks privity with Smuckers. *See* Def.'s Mot. at 24-25. Both arguments are unpersuasive.

First, Defendant's labeling of Crisco Oil as "All Natural" is an actionable warranty. Under New York Uniform Commercial Code Law § 2-313(1)(a), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." Generalized statements by the defendant, however, do not support an express warranty claim if they are "such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." *Hubbard v. General Motors Corp.*, No. 95cv4362, 1996 WL 274018, at \*6 (S.D.N.Y. May 22, 1996) (internal

quotations omitted). But what a reasonable consumer's interpretation might be is a matter of fact which is not appropriate for decision on a motion to dismiss. At present, it cannot be said that a reasonable consumer cannot interpret "All Natural" as a factual claim about Crisco Oil. *See, e.g., In re Frito-Lay*, 2013 WL 4647512, at \*27 (holding that the phrase "All Natural" constituted a statement of fact); *Parker*, 2013 WL 4516156, at \*20 (describing the phrase "All Natural" as "an affirmative claim about a product's qualities"); *see also* Compl. ¶ 2 (alleging that Defendant uses the phrase "because consumers perceive all natural foods as better, healthier, and more wholesome"). As a result, Plaintiff has alleged an actionable warranty.

Second, privity between Plaintiff and Defendant is not required. "A buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty 'may include specific representations made by a manufacturer in its sales brochures or advertisements regarding a product upon which a purchaser relies.'" *Goldemberg*, 2014 WL 1285137, at \*12 (quoting *Arthur Click Leasing, Inc. v. William J. Petzold, Inc.*, 51 A.D.3d 1114, 1116 (N.Y. App. Div. 3d Dep't 2008)). Since Plaintiff brings this action against Defendant for specific representations it made in its advertising, Plaintiff may maintain her breach of warranty claims even though she did not purchase the products directly from Defendant.

## VI.    Plaintiff Currently Has Standing to Bring Her Claims

Defendant claims that Plaintiff "lacks standing to pursue any claims involving Crisco oils she did not purchase." *See* Def.'s Mot. at 24. But Plaintiff currently has Article III standing to bring her claims against Defendant because she alleges to have purchased several of the Crisco Oil products in the past four years "in reliance on Defendant's representations that the Products are 'All Natural'" and to have suffered injury as a result. *See* Compl. ¶ 8. Once plaintiff has satisfied Article III's requirements, the inquiry shifts "from the elements of justiciability to the

ability of the named representative to 'fairly and adequately protect the interests of the class.'"

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2d Cir. 2012)

(quoting Fed. R. Civ. P. 23(a)). "Whether the plaintiffs' injuries are sufficiently similar to those

of the putative class members who purchased other products—and whether plaintiffs will

therefore adequately represent the interests of the class—is a question the Court will consider on

a Rule 23 certification motion." *In re Frito Lay*, 2013 WL 4647512, at *13.

## CONCLUSION

Accordingly, Defendant's motion to dismiss the complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6) is DENIED. The parties are directed to submit a proposed civil case

management plan within three weeks after the issuance of this Opinion and Order.

Dated:  New York, New York
     May 15, 2014

                                 SO ORDERED

                                 PAUL A. CROTTY
                                 United States District Judge

13