UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

ADRIANNA AULT, individually and on
behalf of all others similarly situated,

                Plaintiff,

    -against-

J.M. SMUCKER CO., an Ohio corporation,
and DOES 1-50,

                Defendants.
-----------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 8-6-15

13 Civ. 3409 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    On May 21, 2013, Plaintiff Adrianna Ault filed her complaint that Defendant J.M. Smucker Co., owner of the Crisco brand, violated N.Y. Gen. Bus. Law ("GBL") §§ 349 and 350, and breached an express warranty by labelling certain Crisco cooking oils as "All Natural." This is claimed to be misleading, because the oils are made using genetically modified organism ("GMO") crops, and are so heavily processed that they are man-made.

    On May 15, 2014, this Court denied Defendant's motion to dismiss the complaint. Plaintiff now seeks class certification, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), for her N.Y. GBL § 349 claim. Plaintiff's proposed class includes:

> [C]onsumers who purchased one or more of the following products in New York: Crisco Pure Vegetable Oil and/or Crisco Pure Corn Oil between February 15, 2009 and June 1, 2014; and/or Crisco Pure Canola Oil and/or Crisco Natural Blend Oil between June 1, 2010 and June 1, 2014.

Mtn. at 2.

    Plaintiff has not demonstrated that the proposed class is ascertainable, or that classwide issues predominate. Plaintiff has also failed to show that she is entitled to injunctive relief. Her

motion is DENIED.

## BACKGROUND

Defendant acquired the Crisco brand in 2002. Blood Decl., Ex. 3 at 5. Crisco currently sells nine varieties of cooking oil: Vegetable Oil, Corn Oil, Natural Blend Oil, Canola Oil, Frying Oil Blend, Canola Oil with Omega-3 DHA, 100% Extra Virgin Olive Oil, Pure Olive Oil, and Light Olive Oil. Lee Decl., Exs. 2-10. At various times between 2002 and the present, certain—but not all—of these oils bore a label stating that the product was "All Natural." Crisco's Vegetable and Corn Oils bore an "All Natural" label from the time Defendant acquired the brand in 2002. Blood Decl., Ex. 3 at 4-5. The "All Natural" label was added to the Canola and Natural Blend Oils in late 2009; bottles bearing the new labels began shipping to retailers and distributors in 2010. *Id.*[1] The labels of the five remaining varieties (Frying Oil Blend, Canola Oil with Omega-3 DHA, 100% Extra Virgin Olive Oil, Pure Olive Oil, and Light Olive Oil) never contained the phrase "All Natural." Lee Decl., Ex. 22 ¶ 3.

Defendants decided to remove the "All Natural" label from the Natural Label Oils sometime "[p]rior to February 2013." *Id.* ¶ 4. In early 2014, Defendant began shipping to retailers and distributors bottles of Vegetable Oil, Corn Oil, and Canola Oil that did not contain the "All Natural" labels. Defendant is "currently finalizing . . . label artwork" without the "All Natural" label for Crisco Natural Blend Oil. *Id.* ¶ 7. Tina Floyd, Defendant's Vice President of Marketing for Consumer Foods, submitted a sworn declaration stating that Defendant "has no plans to re-introduce the 'all natural' claim on the Crisco Oil labels at any point in the future," and that she "can foresee no scenario under which [Defendant] would consider re-introducing the 'all natural' claim on Crisco Oil labels." *Id.* ¶ 8.

---

[1] The Vegetable, Corn, Canola, and Natural Blend Oils are collectively referred to as the "Natural Label Oils."

2

According to Plaintiff, the "All Natural" label was deceptive for two reasons. First, Defendant purchases from third parties the crude soy, canola, and corn oils from which it manufactures its cooking oils. Many such crude oils are derived from GMO crops, and Defendant does not differentiate between GMO and non-GMO crops when purchasing crude oils. Blood Decl., Ex.3 at 8-9. Plaintiff therefore asserts that the Natural Label Oils contain GMO crops, which she claims are not "natural" because they "have had their genetic makeup altered to exhibit traits that are not naturally theirs." Mtn. at 6.

Second, Plaintiff argues that the "All Natural" label was misleading because the Natural Label Oils are heavily processed using chemicals: after Defendant purchases source oils from its suppliers, it refines the oils using a multi-step process, which includes exposing the oils to high temperatures, treating them with phosphoric acid, running them through centrifuges, bleaching them with diatomaceous earth, and deodorizing them. *Id.*, Ex. 16. Plaintiff argues that, as a result, the Natural Label Oils are "chemically altered" and "highly processed," and cannot be considered "natural." Mtn. at 8.

Defendant responds that class certification is improper because the term "natural" is not susceptible to a uniform meaning. The Food and Drug Administration ("FDA") has declined to adopt a definition of "natural," Lee Decl., Ex. 23, and Defendant asserts that consumers define "natural" in diverse ways. Defendant points to a survey conducted by its expert, Dr. Itamar Simonson (the "Simonson Survey"), which determined that 55% of respondents could not define or did not know "what 'All [N]atural' cooking oil meant." *Id.*, Ex. 29 at ¶ 44. The respondents who attempted to define the term "natural" in the context of cooking oils "provided a wide range of answers." *Id.*

3

Defendant argues that class certification must also fail because consumers bought the Natural Label Oils for many reasons unrelated to whether the products were "natural." According to the Simonson Survey, respondents' most common considerations in deciding whether to purchase cooking oil were price and brand awareness. *Id.*, Ex. 29 at ¶ 33. Only 1.6% of respondents indicated that whether an oil was "natural" factored into their purchasing decision. *Id.*

## LEGAL STANDARDS

### I.   New York General Business Law § 349

N.Y. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." A claim under § 349 "has three elements: (1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007). An act is "misleading" if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (citation omitted). A plaintiff need not prove a defendant's intent to deceive, *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 403-04 (S.D.N.Y. 2010), nor must a plaintiff show reliance on the misleading act or practice. *See Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003). In demonstrating that she "sustained injury as a result" of defendant's action, the plaintiff must merely show that she suffered a loss "because of" the defendant's "deceptive act." *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 147 (S.D.N.Y. 2014) (citation omitted).

### II.   Class Certification

When considering "whether class certification is appropriate," courts "first ascertain whether [plaintiffs'] claims meet the preconditions of Rule 23(a)." *Teamsters Local 445 Freight*

4

*Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201 (2d Cir. 2008).  Rule 23(a) requires

plaintiffs to demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there
> are questions of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Plaintiffs who seek relief under Fed. R. Civ. P. 23(b)(3) must demonstrate that "the

questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiffs seeking certification of claims for injunctive relief under Fed. R. Civ. P. 23(b)(2),

on the other hand,  must show that "the party opposing the class has acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting

the class as a whole."  Fed. R. Civ. P. 23(b)(2).

A plaintiff seeking class certification bears "the burden of establishing by a preponderance

of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624

F.3d 537, 547 (2d Cir. 2010).  To determine whether that burden has been met, the court conducts

a "rigorous analysis," and "resolve[s] factual disputes relevant to each Rule 23 requirement." *In*

*re Am. Int'l Group, Inc. Secs. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) (citations omitted).  Though

the analysis may "entail some overlap with the merits of the plaintiff's underlying claim," merits

questions "may be considered . . . only to the extent[] that they are relevant to determining whether

the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans &*

*Tr. Funds*, 133 S. Ct. 1184, 1194-95 (2013).

## DISCUSSION

**I.     Certification Under Rule 23(b)(3)**

Defendant argues that certification under Rule 23(b)(3) should be denied because Plaintiff has failed to demonstrate ascertainability and commonality, as required by Rule 23(a), and predominance, as required by Rule 23(b)(3).

### a.   Ascertainability

In addition to the requirements of Rule 23(a), courts recognize an "implied requirement of ascertainability." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006). A class is ascertainable if it is "readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." *Charrons v. Pinnacle Group NY LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (citation omitted). The class must be "defined by objective criteria that are administratively feasible," and identifying class members should not "require a mini-hearing on the merits of each case." *Id.*

It is undisputed that many potential class members will not have retained records of their cooking oil purchases, but nonetheless the class is ascertainable, Plaintiff argues, because it is "defined by objective criteria: those who purchased one or more" of the Natural Label Oils during the class period. Mtn. at 24. She further represents that, "[t]o the extent retailer records are needed, many Class Members can be individually identified." Reply Mtn. at 3. Though she does not elaborate in her papers, it appears that Plaintiff served subpoenas on "major California retailers identified by Defendant as purveyors of the Cooking Oils at issue," and received identifying information for "consumers accounting for over 4.5 million sales of the Cooking Oils." Wolfson Decl. ¶¶ 20-21.

This falls well short of establishing ascertainability. While the criteria may be objective, Plaintiff has not shown that it is "administratively feasible." *See Charrons*, 269 F.R.D. at 229. Her mere assertion that "records exist to identify many class members" does not suffice. Mtn. at 24 n.5. Defendant sells to retailers and distributors, not to consumers, and therefore has no records regarding the ultimate purchasers of the Natural Label Oils. Lee Decl., Ex. 22 ¶ 9. Plaintiff claims to have obtained identifying information for 4.5 million sales from California retailers, but offers no evidence concerning what percentage of sales this number represents, whether she could obtain similar information from New York retailers, and whether such data would identify more than a small percentage of class members.

Plaintiff argues that self-identification is also a feasible method for determining class membership; she does not explain, however, how such self-identification would be performed or authenticated. Courts in this district have expressed differing views regarding self-identification in class actions involving allegedly misleading labels on consumer products. In *Weiner v. Snapple Beverage Corp.*, plaintiffs claimed that defendant Snapple had misleadingly labeled its juice drinks as "All Natural." They proposed that class members be identified by producing a receipt or product label, or signing a declaration confirming the purchase of a Snapple beverage during the class period. 2010 WL 3119452, at *1 (S.D.N.Y. Aug. 5, 2010). The Court rejected these methods as "unrealistic," because plaintiffs offered "no basis to find that putative class members will have retained a receipt, bottle label, or any other concrete documentation of their purchases of Snapple beverages bearing the 'All Natural' description." *Id.* at *13. The Court expressed particular concern that some Snapple products sold during the class period bore the "All Natural" label, while others did not. *Id.* at *1, 13. The Court determined that "putative class members [were] unlikely to remember accurately every Snapple purchase during the class period," and "soliciting

7

declarations from putative class members regarding their history of Snapple purchases would invite them to speculate, or worse." *Id.* at \*13.

In *Ebin v. Kangadis Food Inc.*, another Court in this District reached a different result. 297 F.R.D. 561, 567 (S.D.N.Y. 2014). Plaintiffs claimed that defendants had improperly labeled their olive oil "100% Pure Olive Oil," when in fact it contained an industrially-processed substance. *Id.* at 564. The Court declined to follow the reasoning in *Snapple*, and held that the class was ascertainable even though some class members may have "discarded the product." *Id.* at 567. The Court explained that "the Second Circuit has instructed that 'failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule,'" and cautioned that the holding in *Snapple* "would render class actions against producers almost impossible to bring." *Id.* (quoting *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001)).

In *Ebin*, however, every bottle of olive oil sold during the class period contained the allegedly misleading label, so potential class members were required to recall only whether they had purchased the product during the period—unlike in *Snapple*, in which potential class members were required to remember the specific flavor or variety of juice they had supposedly purchased. Courts across the country have expressed doubt that a class is ascertainable in cases such as *Snapple*, where only certain products on the market during the class period contain the allegedly misleading labels. *See Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at \*10 (N.D. Cal. June 13, 2014) ("[T]hat there are seven varieties of PAM, some of which bore the '100% Natural' label and some of which did not, and that two of the products bearing the '100% Natural' label stopped bearing that label in 2010, makes it all the less likely that a consumer would accurately remember whether he had been exposed to the label."). *Cf. In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 566

8

(C.D. Cal. 2014) ("[C]ourts have concluded that [self-identification through claim forms or declarations] makes the class ascertainable, *at least where the alleged mislabeling occurred throughout the class period, and on a single product or narrow group of products*.") (emphasis added).

*Randolph v. J.M. Smucker Co.* confronted this issue in a virtually identical case. 303 F.R.D. 679, 689 (S.D. Fla. 2014). There, the Court distinguished cases in which the "uniformity of the products . . . [made] it far easier for a potential class member to recall whether they [had] purchased the good containing the misrepresentation," and held that "taking the . . . variations in Crisco products in conjunction with the fact that the challenged product is a low-priced consumer item, of which the normal consumer likely does not retain significant memory about, the likelihood of a potential class member being able to accurately identify themselves as a purchaser of the allegedly deceptive product, is slim." *Id.* at 688-89.

*Randolph*'s reasoning is persuasive here. Defendant sells nine different brands of cooking oil, only four of which ever bore the "All Natural" label. Lee Decl., Exs. 2-10, Ex. 22 ¶ 3. Permitting potential class members to self-identify would require them to specifically recall each variety of Crisco cooking oil they purchased during the class period. Adding to the confusion, the "All Natural" label appeared on the four brands at different times, and the class period is defined differently for the Vegetable and Corn Oils (February 15, 2009 to June 1, 2014) than the Canola and Natural Blend Oils (June 1, 2010 to June 1, 2014). *Id.* Based on the class definition, therefore, an individual who purchased Crisco Corn Oil in 2009 would be a member of the class, but one who purchased Canola Oil that same year would not. Who could possibly recall that level of detail six years (or more) later?

9

The Court is mindful of the concern that too rigorous an ascertainability requirement "would render class actions against producers almost impossible to bring." *See Ebin*, 297 F.R.D. at 567. Here, however, the number of Crisco cooking oil brands—some with the "All Natural" label, some without—plus the differing class periods, renders accurate self-identification infeasible. Indeed, Plaintiff herself could not recall the number of bottles of Crisco cooking oil she had purchased during the class period. Lee Decl. Ex. 19 at 109-10.

Plaintiff has not demonstrated that the class is ascertainable. But because "the Second Circuit has instructed that 'failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule,'" the Court will also consider Plaintiff's arguments regarding commonality and predominance. *See Ebin*, 297 F.R.D. at 567 (quoting *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d at 140).

### b. Commonality and Predominance

Commonality requires plaintiffs' claims to "depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The determining factor is not whether common questions exist, but rather "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citations omitted).

The predominance requirement "is a more demanding criterion than the commonality inquiry under Rule 23(a)." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Class-wide issues predominate if "resolution of some of the legal or factual questions . . . can be achieved through generalized proof," and are "more substantial than the issues subject only to individualized proof." *Id.*

10

To demonstrate a violation of GBL § 349[2], Plaintiff must show that the "All Natural" label was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *See Cohen*, 498 F.3d at 126 (citation omitted). Plaintiff asserts that the inquiry is an objective one, and is therefore "amenable to class treatment." Reply. Mtn. 3. Defendant, on the other hand, argues that, because there is no uniform definition of the term "natural," Plaintiff "cannot prove on a class-wide basis that the '[A]ll [N]atural' label is false or misleading" because "consumers' understanding of this label varies." Opp. Mtn. 14.

Courts have reached differing conclusions on this issue. *Compare Randolph*, 2014 WL 7330430, at \*14 (denying class where plaintiff had "not demonstrated that an objectively reasonable consumer would agree with her interpretation of 'all natural'") *with Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at \*14 (N.D. Cal. May 23, 2014) (holding that "the objective inquiry into whether a reasonable consumer would attach importance to . . . label statement[]" that product was "All Natural" was "a question common to the class") (citation omitted). It is unnecessary to decide this issue, however, because Plaintiff has failed to demonstrate an adequate method for determining whether potential class members were injured by Defendant's conduct.

"Injury is adequately alleged under" GBL § 349 "by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at \*23 (E.D.N.Y. July 21, 2010). Injury is therefore "bound up in proof of damages, or by how much plaintiffs have been harmed." *Weiner*, 2010 WL 3119452, at \*6 (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 227 (2d Cir. 2008)).

---

[2] *See* p. 4, *supra*.

11

Although "individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)," the fact that "damages may have to be ascertained on an individual basis" is a factor that courts "must consider in deciding whether issues susceptible to generalized proof outweigh individual issues." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 408-09 (2d Cir. 2015) (citation omitted). A plaintiff's damages model "must be consistent with its liability case," and must "measure only those damages attributable to that theory." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).

Plaintiff asserts that the "injury to Plaintiff and class members is . . . subject to common proof" because the inclusion of the "All Natural" label "had the effect of increasing the price of the [c]ooking [o]ils for everyone." Mtn. at 21. She also points to evidence that Defendant believed that the "All Natural" label "would drive sales." Mot. 3; Blood Decl., Ex. 5 at 78, Ex. 11. Yet Plaintiff offers no evidence that a price premium actually existed for cooking oils labeled "All Natural,"[3] nor has she proposed a reliable method for determining the existence or amount of any such price premium.

Plaintiff proposes to determine "the extent to which the consuming public overpaid for the [Natural Label Oils]" using an as-yet unconducted consumer survey proposed by her expert, Dr. Keegan. Blood Decl. Ex. 18 ¶ 38. Survey participants would consist of "past purchasers of" the Natural Label Oils, who would be assigned randomly to one of two panels. *Id.* ¶¶ 35-36. Both panels would be shown a bottle of Crisco cooking oil containing the "All Natural" label; but only one panel would receive "additional objectively-worded factual information regarding the [cooking oils'] ingredients (*e.g.*, that the [cooking oil] is made from genetically modified

---

[3] In fact, the Simonson Survey conducted by Defendant's expert sought to measure whether consumers were willing to pay more for cooking oils labeled "All Natural." According to the Survey, the median amount that Crisco consumers were willing to pay was the same amount—$3.49—for Crisco cooking oils that contained the "All Natural" label and those that did not. Lee Decl., Ex. 29 ¶ 40.

NAV

ingredients)." *Id.* ¶ 35. Participants would then be asked questions regarding the likelihood that they would repurchase the product, as well as the price they would be willing to pay for the product. *Id.* ¶¶ 36-37. According to Dr. Keegan, "[t]o the extent that the price that consumers are willing to pay for the [cooking oils] differs meaningfully" between the two panels, "this difference is attributable to the additional information provided" regarding the ingredients. *Id.* at ¶ 37.

This methodology is not "consistent with [Plaintiff's] liability case," *see Comcast Corp.*, 133 S. Ct. at 1433, because it makes no attempt to calculate the amount that consumers actually overpaid due to the "All Natural" label. Rather than analyzing actual pricing and sales data for the Natural Label Oils, Dr. Keegan merely proposes to ask some unspecified subsection of Crisco customers what they would pay for a hypothetical Crisco product. *Cf. In re ConAgra Foods, Inc.*, 2015 WL 1062756, at *66-72 (C.D. Cal. Feb. 23, 2015) (method for calculating damages sufficient to satisfy *Comcast* where experts used hedonic regression analysis, based on defendant's business records and market research data concerning retail prices, combined with mathematical analysis of survey responses, to determine the percentage of price premium "specifically attributable to a customer's belief that '100% Natural' means 'no GMOs'"). Dr. Keegan does not explain what, if any, analysis he proposes to perform on the results of the survey. *See id.* at *70 (mathematical analysis based on survey responses "produce[d] statistical measures that [expert could] use to determine whether the tested variables were valid and reliable"). Moreover, Dr. Keegan's analysis further compounds the problems with the ascertainability of the class, by designating potential class members—many of whom may be unidentifiable—as the very individuals who will determine the amount of damages to which they are entitled.

Plaintiff argues that "a similar approach was recently approved by this court in *Ebin*"; but that case is distinguishable. It will be recalled that the plaintiff in *Ebin* alleged that a product

identified as "100% Pure Olive Oil" in fact contained "olive-pomace oil," which "typically sells in bulk quantities for 50% less than bulk refined oil." *Ebin*, 297 F.R.D. at 564-65. Damages could then be calculated by determining the difference between the market price of 100% pure olive oil and the market price of the (less expensive) olive-pomace oil. *Id.*; *see Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 761 (7th Cir. 2014) (damages susceptible of classwide determination where plaintiff alleged that package contained instant coffee, rather than ground coffee). Here, Plaintiff points to no alternate product whose market price could be used as a yardstick to determine what Plaintiff would have paid, but for the alleged misrepresentation. *See Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at \*12 (N.D. Cal. Dec. 3, 2014) ("[P]laintiff has not offered any expert testimony demonstrating a gap between the market price of Ben & Jerry's 'all natural' ice cream and the price it purportedly should have sold for if it had not been labeled 'all natural'").

Accordingly, Plaintiff's motion for class certification under Rule 23(b)(3) is DENIED.

## II.     Rule 23(b)(2) Requirements

A Rule 23(b)(2) class is appropriate only when "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2557. Individualized monetary claims are inappropriate in a class certified under Rule 23(b)(2); therefore, claims for monetary relief may not be certified under Rule 23(b)(2), "at least where . . . the monetary relief is not incidental to the injunctive or declaratory relief." *Id.*

Plaintiff seeks an injunction preventing Defendant from marketing its cooking oils as "All Natural," and requiring it to engage in corrective advertising "to educate the public about the true nature of the Cooking Oils." Mtn. at 16.

Plaintiff has not demonstrated that such relief is necessary. Defendant has already removed the "All Natural" label from three of the four challenged products; it is in the process of

14

removing the "All Natural" label from the fourth. Lee Decl., Ex. 22. Moreover, Defendant has

submitted a sworn declaration that it "has no plans to re-introduce the 'all natural' claim on the

Crisco Oil labels at any point in the future." *Id.*; *see In re Scotts EZ Seed Litig.*, 304 F.R.D. 397,

408 (S.D.N.Y. 2015) ("[I]t appears the 50% thicker claim has already been removed from EZ

Seed's packaging, and it is not clear what additional injunctive relief plaintiffs seek. Thus,

certification of a 23(b)(2) class does not appear necessary."). Nor has Plaintiff made any

showing that corrective advertising is warranted. *See C=Holdings B.V. v. Asiarim Corp.*, 992 F.

Supp. 2d 223, 250 (S.D.N.Y. 2013) ("An order of corrective advertising must be reasonable and

causally related to the false advertising.") (citation omitted).

## CONCLUSION

Plaintiff's motion for class certification under Fed. R. Civ. P. 23(a), 23(b)(2) and

23(b)(3) is DENIED.

Dated: New York, New York
     August 6, 2015   *am*

                                   SO ORDERED

                                   PAUL A. CROTTY
                                   United States District Judge